Alexander A. RESEK, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. 5884.

Court of Appeals of Alaska.

May 13, 1982.

Marlin D. Smith, Fairbanks, for appellant.

Rhonda F. Butterfield, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

Alexander A. Resek, Jr., was charged with possession of cocaine and possession of cocaine for sale, both in violation of AS 17.10.010. Resek moved to suppress evidence seized pursuant to a search warrant, and upon denial of this motion, he entered a *Cooksey* plea of no contest to the charge of possession. *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n.4 (Alaska 1978); *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). Because the state's key witness to the sale charge had disappeared, the state dropped the charge of sale of cocaine.

Resek was sentenced to a term of five years with three years suspended, and he now appeals to this court challenging both the denial of his motion to suppress and the length of his sentence. Having reviewed the record and the briefs, we conclude that Resek's claims are without merit. Accordingly, we affirm.

On the morning of September 20, 1980, Mrs. Albert Monsma was looking for a young girl who had threatened to commit suicide. In the course of her search for the girl, Mrs. Monsma entered the apartment of Nada Alayoubi where she saw an unattended child and a plate containing cocaine. Mrs. Monsma became upset at this situation because she felt there was enough cocaine on the plate to kill the child if the child got into it. At this point, Alayoubi came out of a bedroom and offered to sell some of the cocaine to Mrs. Monsma. Mrs. Monsma refused the cocaine, left the apartment and told her husband what she had seen.

Mr. Monsma then went to the state police headquarters and relayed what his wife had told him. Shortly thereafter, Investigator Grimes appeared in court requesting a search warrant for the apartment of Nada Alayoubi. Investigator Grimes testified to what Mr. Monsma said his wife had told him she had seen. A search warrant was issued and it was immediately executed.

The search of Alayoubi's apartment uncovered a number of items of cocaine paraphernalia, most of which were covered with a white powder residue. Alayoubi told the officers that the paraphernalia belonged to a man she knew only as Jose. She stated that he had been in possession of two ounces of cocaine on the previous evening. Shortly thereafter, a man, who was identified by Alayoubi as Jose, arrived. Jose, later identified as Alexander Resek, was taken into custody. A search incident to arrest uncovered a small vial of cocaine which Resek had been carrying on his person. The officers then applied for a search warrant for Resek's car. The warrant was issued and the search uncovered 2.2 ounces of cocaine.

Prior to entering his plea of no contest, Resek moved to suppress the evidence found during the search of Alayoubi's apartment on the ground that the search warrant was invalid because it was based on double hearsay.

 It is clear that the warrant was predicated on double hearsay; Investigator Grimes told the court what Mr. Monsma said his wife had told him. The fact that the warrant was founded upon double hearsay, however, does not necessarily require the invalidation of the warrant.

> An affidavit for a search warrant can properly include hearsay based on hearsay provided it contains information 'relating to (1) the reliability of the informant and (2) some knowledge of the underlying facts to support the conclusion that a crime had been committed.' *United States v. Carmichael*, 489 F.2d 983, 986 (7th Cir. 1973).

*United States v. DiNovo*, 523 F.2d 197, 200 (7th Cir. 1975), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975). *Accord United States v. Wilson*, 479 F.2d 936, 941 (7th Cir. 1973); *United States v. Fiorella*, 468 F.2d 688, 691 (2nd Cir. 1972); *United States v. Smith*, 462 F.2d 456, 459 (8th Cir. 1972); *People v. Mardian*, 47 Cal.App.3d 16, 121 Cal.Rptr. 269, 279 (1975); *See Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Schmid v. State*, 615 P.2d 565, 575 (Alaska 1980).

Applying this two-pronged test to the instant case, it may be concluded that both Mr. and Mrs. Monsma may be characterized as reliable informants. In *Erickson v. State*, 507 P.2d 508, 517–18 (Alaska 1973), the court delineated the approach to be taken in evaluating the trustworthiness of "citizen informers."

> When information is provided by a cooperative citizen, or an informant not from the criminal milieu there is less need for establishing credibility of the informant. The [Wisconsin] court in *State v. Paszek* [50 Wis.2d 619, 184 N.W.2d 836] stated:

A different rationale exists for establishing the reliability of named 'citizen-informers' as opposed to the traditional idea of unnamed police contacts or informers who usually themselves are criminals. Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out of revenge against the subject. The nature of these persons and the information which they supply convey a certain impression of unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown. One practical way of making such a showing is to point to accurate information which they have supplied in the past.

An ordinary citizen who reports a crime stands on a much different footing. He acts with an intent to aid the police in law enforcement because of a concern for society or his own safety. Since the citizen informer often provides information only once, there is little opportunity to establish credibility or reliability in the most common manner—comparison with accurate information provided in the past.

We hold that a valid arrest may be made on information provided by a 'citizen informer' and that the informer's prior reliability need not be established before the arrest. The only caveat placed on such a rule is that some of the details of the information must be verified before arrest occurs. [Footnotes omitted.]

Applying this standard to the instant case, it seems clear that Mr. and Mrs. Monsma were trustworthy and reliable. Their provision of information was apparently based on a sense of civic duty and on a concern for the safety of others. Furthermore, as noted below, there was some verification of the details of their information.

Addressing the second prong of the test which relates to the reliability of the information itself, it is significant that some of the information was independently verified by the police themselves. Mrs. Monsma had entered Alayoubi's apartment in an effort to locate a young girl who had threatened suicide. Investigator Grimes testified that he was independently made aware of the search for the girl through a radio broadcast from the Fairbanks Police Department. Also, that Alayoubi was the occupant of the apartment in issue was verified by Investigator James McCann who had been to that apartment a couple of days before to talk to Alayoubi about another matter. The details of the testimony show that Mrs. Monsma claimed first hand knowledge of the presence of cocaine in the Alayoubi apartment. Mrs. Monsma claimed to have personally seen the cocaine and the details of the testimony show that Mrs. Monsma was in a position to have seen the cocaine. The fact that Nada Alayoubi offered to sell Mrs. Monsma cocaine tends to clarify how Mrs. Monsma could identify the substance as cocaine.

When viewed in context, we can find no error here in basing the issuance of a warrant to search Alayoubi's apartment on double hearsay. Both Mr. and Mrs. Monsma were trustworthy informants and the information they provided had the necessary indicia of reliability. Accordingly, we hold that despite the reliance upon double hearsay, under these circumstances, it was not improper to conclude that probable cause for a search warrant had been established.[1]

Resek challenges his sentence of five years, with three years suspended, as exces-

1. In reaching this decision, we are not unaware of the pronouncement in *Davis v. State*, 499 P.2d 1025, 1029 (Alaska 1972), explicitly cautioning against reliance upon double hearsay in securing a warrant. Read in context, we do not believe that case stands for the proposition that a warrant may never be based upon some form of multiple hearsay. Rather, the focus is on the personal knowledge of the affiant and the aim is to avoid the issuance of a warrant upon the basis of mere rumor and innuendo. Accordingly, we believe that double hearsay may be used in establishing probable cause for a warrant provided sufficient grounds are established for assuring the reliability of the information presented.

sive. We believe that it was not improper for the trial judge to consider at sentencing the fact that 2.2 ounces of cocaine were found in the car Resek was driving and to consider that Resek had threatened a witness. *Nukapigak v. State*, 562 P.2d 697 (Alaska 1977). With this information the trial court could have found this case similar to cases involving the sale of small quantities of cocaine such as *LeDuff v. State*, 618 P.2d 557 (Alaska 1980), and *Dana v. State*, 623 P.2d 348 (Alaska 1981). We do not find that the sentence was clearly mistaken.

AFFIRMED.