STATE of Alaska, Appellant,

v.

Constantine MALKIN, Appellee.

No. 7508.

Court of Appeals of Alaska.

March 9, 1984.

Richard W. Maki, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

Charles R. Pengilly, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Constantine Malkin was charged with possession of cocaine in violation of former AS 17.10.010. Malkin moved to suppress evidence seized pursuant to a search warrant.[1] The motion was granted, and the case was dismissed by Superior Court Judge Jay Hodges. The state now appeals that dismissal.

On March 9, 1982, Trooper Rod Harvey obtained a search warrant based on his own affidavit to search Malkin's residence for cocaine, cutting material and other drug paraphernalia. The affidavit reads as follows:

1. Your affiant is a Sergeant with the Alaska State Troopers and is currently assigned to a drug investigation unit for the purposes of investigating illegal drug activities in the Fairbanks area.

2. On March 9, 1982, at approximately 2 a.m., your affiant received information from JG–14 via telephone. JG–14 indicated that he heard approximately 6 pounds of cocaine had arrived in Fairbanks. At that time JG–14 indicated an individual known as Arthur MacArmour had an ounce of cocaine from this supply.

3. On March 9, 1982, at approximately 1:30 p.m., JG–14 again contacted your affiant by phone. He stated that "Mac" was dissatisfied with the quality of drugs he had obtained. JG–14 saw a white powder and chunks contained in a clear plastic zip lock baggie with a red line across the top, in the possession of "Mac."

4. JG–14 stated that on March 9, 1982, he transported "Mac" to an apartment in the Sandvick Apartment Complex where a red Dodge Challenger with chrome wheels which in the past JG–14 had seen "Mac" operating. [sic] Ac-

1. As a result of the search pursuant to the warrant approximately twenty ounces of cocaine were found.

cording to JG–14, "Mac" entered on the apartments and returned with a brown paper bag. "Mac" indicated to JG–14 that it contained cutting material.

5. JG–14 further stated that on March 9, 1982, he transported "Mac" to the residence of 144 Pepperdine Street. The description of the residence was a brown two story wood exterior dwelling with wooden balcony on back side, stairs in center of the front, picture window right of front side, a garage on the lower level located at 144 Pepperdine Street in University West Subdivision. JG–14 had been in this residence previously and knew the primary occupant and controlling party to be Constantine Malkin. JG–14 had previously [shown] your affiant this residence and your affiant has personal knowledge of the aforementioned description of the residence.

6. On March 9, 1982, while at 144 Pepperdine Street, "Mac" went inside to return the baggie of white powder and the bag of cutting material. When "Mac" returned to JG–14 in the vehicle, he was not carrying any of the aforementioned items.

7. JG–14 stated that "Mac" indicated to him that there were four people in the residence of 144 Pepperdine including Jesus (last name unknown), two white female adults, and Constantine Malkin. "Mac" also indicated that these individuals were all "screwed up" on cocaine.

8. JG–14 stated that "Mac" had informed him that the six pounds of cocaine when it arrived was in one brick, and that one pound had gone to Barrow, one pound to Prudhoe Bay, and the rest unaccounted for.

9. JG–14 has been receiving information over the past several months in regards to transportation and sale of cocaine from San Francisco to Fairbanks, Alaska.

10. On December 30, 1981, Sgt. Harvey and Sgt. Grimes of Alaska State Troopers had contact with Constantine Malkin at the Fairbanks Memorial Hospital. At that time he confirmed the information being passed on by JG–14.

11. JG–14 is an informant known by your affiant who has furnished reliable information in the past. Previous search warrants have been obtained from his information with reliable results.

12. It is believed that from JG–14 information and past investigation there is evidence of cocaine and sale of cocaine at the residence located at 144 Pepperdine Street.

At the suppression hearing, testimony revealed that Trooper Harvey's affidavit contained two misstatements. Paul Baum, the person referred to as JG–14 in the affidavit, testified that MacArmour ("Mac") had never told him directly that the large bag contained cutting material. This was an inference which Baum had made from his conversation with MacArmour. Baum also testified that paragraph six of Officer Harvey's affidavit was incorrect. Although the affidavit read that MacArmour went inside the house with the baggie of white powder and grocery bag of cutting material and came out with neither, Baum stated that only the grocery bag was actually left inside. When initially asked what he told Officer Harvey in relation to paragraph six, Baum testified that he could not remember. Baum later testified that he thought he told Harvey that MacArmour brought the cocaine out of Malkin's house with him, because MacArmour had said the people inside were too screwed up to do business.

Judge Hodges reasoned that the search warrant affidavit should be analyzed with the misstatements removed to determine whether the affidavit was sufficient to establish probable cause.[2] He concluded that the affidavit was insufficient to establish probable cause when the misstatements

---

2. We note that Judge Hodges excised the misstatements prior to testing the affidavit for probable cause, apparently in accordance with *State v. Davenport,* 510 P.2d 78, 82, *aff'd after re-* *mand,* 515 P.2d 377 (Alaska 1973). He did not appear to make any finding as to the culpability of Officer Harvey in making the misstatement. *See infra* pp. 1361–1362.

were removed, and granted the suppression motion.

After Judge Hodges' ruling, the state moved for reconsideration. At the reconsideration hearing, Trooper Harvey testified that it was his understanding from talking to Mr. Baum that MacArmour had entered the residence with the grocery bag of cutting material and the plastic baggie of cocaine and that Baum did not see either bag when MacArmour returned to the car. Trooper Harvey did not ask Baum whether MacArmour said he left the cocaine in the residence or whether Mac could have brought the cocaine out in his pocket.

Judge Hodges found that the affidavit within its four corners (including misstatements) did establish probable cause to justify issuance of a search warrant. After excising the misstatements, however, he found that the affidavit could not support a finding of probable cause and therefore concluded that all evidence obtained as a result of the warrant had to be suppressed.

Malkin contends that the suppression motion should be affirmed on the independent ground [3] that the affidavit was facially invalid to support a finding of probable cause. Malkin's major argument is that the affidavit is insufficient because it is based on double hearsay of what MacArmour told Baum. Therefore, Malkin argues that even without excising any of the misstatements, the affidavit was insufficient and the suppression motion was properly granted. We disagree.

■ Affidavits for search warrants must be tested in a common sense and realistic fashion. *Rosa v. State*, 633 P.2d 1027,

1030 (Alaska App.1981). "In reviewing a magistrate's determination of probable cause this court must give great deference to the magistrate's decision and must resolve doubtful or marginal cases largely by the preference to be accorded warrants." *Id.* at 1029. In this case, Trooper Harvey established Baum's credibility through his representations of Baum's reliability as an informant. The affidavit also establishes that many of Baum's statements were made from personal knowledge and personal contact with MacArmour. *See Kralick v. State*, 647 P.2d 1120, 1123 (Alaska App. 1982). Although MacArmour's statements involved double hearsay, we indicated in *Resek v. State*, 644 P.2d 877, 878 (Alaska App.1982), that double hearsay was not necessarily fatal to a finding of probable cause:

> The fact that the warrant was founded upon double hearsay, however, does not necessarily require the invalidation of the warrant.

> An affidavit for a search warrant can properly include hearsay based on hearsay provided it contains information 'relating to (1) the reliability of the informant and (2) some knowledge of the underlying facts to support the conclusion that a crime had been committed.' *United States v. Carmichael*, 489 F.2d 983, 986 (7th Cir.1973). [Citations omitted.]

■ Veracity of an informant may be proved in the double hearsay situation if the statement can be shown to be a declaration against penal interest. In certain circumstances, admissions of crime carry their own indicia of credibility, sufficient to support a finding of probable cause.[4] *See*

---

3. A correct decision of the trial court on a question of law will be affirmed regardless of the reasons advanced. *Pistro v. State*, 590 P.2d 884, 888 n. 13 (Alaska 1979).

4. LaFave has noted the credibility inherent in circumstances such as existed here, where a reliable informant relates statements to an affiant, which were told to him by a secondary source who is unaware of the informant's police connections.

> In the hearsay-upon-hearsay situation, as where an informant of established reliability tells police what someone else has told him,

there is a need to establish veracity with respect to each person in the hearsay chain. This can be done by showing that these other links made admissions against their penal interest. Indeed, as a general proposition there is more reason to rely upon such admissions than admissions made directly to police, for in the latter situation there is always the chance that the informer is a stoolie who perceives he can admit to criminality without significant risk. Thus, in *Comi v. State*, [26 Md.App. 511, 338 A.2d 918 (1975)] upholding an affidavit reciting what a reliable police

*United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723, 734 (1971); 1 W. LaFave, *Search and Seizure,* § 3.3(d) at 542–43 (1978). The double hearsay statements from MacArmour have greater credibility because they were admissions against his penal interest.

■ We conclude that Judge Hodges was correct when he found that the search warrant affidavit was valid before any deletions were made because of misstatements. We believe that a common sense reading of the affidavit established that: (1) MacArmour purchased one ounce of cocaine from a six-pound supply in Fairbanks; (2) that MacArmour was dissatisfied with the cocaine that he purchased and wanted to return it; and (3) that Malkin's residence contained the cocaine which MacArmour left there and was also probably the place where MacArmour originally purchased the cocaine. These conclusions are bolstered by the fact that MacArmour stated that the occupants of the house "were all screwed up on cocaine."

■ We next address the state's contention that, assuming it was proper for Judge Hodges to excise the erroneous statements from the affidavit, it was error to grant the suppression motion. The state argues that even if the misstatements are stricken from the affidavit, the affidavit was sufficient to support a finding of probable cause. We disagree. We believe that the inference that Malkin's house contained cocaine turns to a large degree on the assertion that MacArmour left his cocaine at Malkin's house. This establishes that MacArmour's cocaine was present at Malkin's house and also tends to establish the inference that Malkin's house was the place where MacArmour originally obtained the cocaine. When we strike the assertion that MacArmour left his cocaine at Malkin's house, these inferences become much

weaker, to the point where we conclude that there was no longer probable cause to issue a search warrant. We agree with Judge Hodges that, with the misstatement stricken, the affidavit does not establish probable cause.

■ Malkin argues that since the search warrant affidavit is invalid with the misstatements stricken, we must affirm Judge Hodges' ruling suppressing evidence based upon the search warrant. He relies on *State v. Davenport,* 510 P.2d 78, 82, *aff'd after remand,* 515 P.2d 377 (Alaska 1973). Malkin interprets *Davenport* as holding that if a search warrant affidavit contains a misstatement, the reviewing court must strike that misstatement and reevaluate the affidavit. If the affidavit is insufficient with the misstatement stricken, the affidavit is invalid. Davenport holds that a non-material misstatement will not invalidate a warrant. We do not read *Davenport* to mean that every material misstatement must invalidate a warrant. We interpret *Davenport* as dealing only with non-material misstatements. If a misstatement can be stricken from the affidavit, and the affidavit still establishes probable cause, then the warrant is valid. In our view, the rule which should be applied to material misstatements is still to be decided under Alaska law. A short history of the law in this area is necessary to understand our interpretation of *Davenport.*

*Davenport* was the first reported case in Alaska to consider an allegation of a misstatement in a search warrant affidavit. The court concluded that a defendant could contest the accuracy of factual representations in the affidavit:

> We believe that since search warrants issue *ex parte,* the courts must be willing to investigate the truthfulness of the material allegations of the underlying affi-

---

informer said an admitted burglary participant had told him, the court correctly reasoned:

The secondary source here was not a paid police informer, nor promised any sort of inducement to speak. In fact, he had no way of knowing his information would eventually arrive at police headquarters. He was merely relating an occurrence to a friend. We conclude that Hustler had no motive to lie and his information was conveyed in circumstances consistent with its reliability.

1 W. LaFave, Search and Seizure, § 3.3(c) at 530 (1978) (footnotes omitted).

davit in order to protect against the issuance of search warrants based on conjured assertions of probable cause. Thus, we believe that challenges to the search warrant and affidavit may be properly entertained during the suppression hearing.

*Id.* at 82.

However, the court concluded that even if some statements made by the affiant in that case were untrue, the alleged misstatements were not material to the magistrate's determination of probable cause to search:

> However, in order for a misstatement of fact in an affidavit to fatally impair the validity of a search warrant, the misstatement must be material to the showing of probable cause upon which the warrant is based. In the case before us, it does not appear that the district judge was influenced by the misstatements in the affidavit to issue a search warrant which he would otherwise have denied. Even assuming the falsity of Gray's statements, we cannot conclude that they were material to a finding of probable cause to search.

*Id.* (footnotes omitted).

Several years after *Davenport*, the United States Supreme Court decided *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The Supreme Court in that case held that defendants could make a limited challenge to the accuracy of the information contained in affidavits for search warrants. The court held that a defendant was entitled to have a search warrant voided if he could establish (1) an intentional falsehood or a reckless disregard for the truth by the affiant and (2) that the false statement was material, *i.e.*, without the false statement the affidavit did not establish probable cause. *Id.* at 156, 98 S.Ct. at 2676, 57 L.Ed.2d at 672.

Shortly after *Franks*, the Alaska Supreme Court in *Moreau v. State*, 588 P.2d 275, 279 n. 9 (Alaska 1978), suggested that it did not consider the issue of when a material misstatement must be stricken from a warrant to have been decided by *Davenport*. The court used language indicating that it would not adopt the *Franks* rule which requires a defendant to show that the misstatements in the affidavit were made intentionally or recklessly:

> The full impact of *Franks v. Delaware* on federal constitutional law in the area of false affidavits remains to be seen. In *People v. Cook*, 22 Cal.3d 67, 148 Cal. [Rptr.] 605, 583 P.2d 130 (1978), the California Supreme Court found that California's constitution requires greater protection than the federal constitution. *Cook* permits challenge of an affidavit when the misstatements are negligent, *Franks* requires an intentional or reckless misstatement; *Cook* quashes the warrant entirely once misstatements are shown, *Franks* deletes the false information and tests the remaining information for probable cause. *Id.* 148 Cal.Rptr. at 615–617, 583 P.2d at 140–42. Since we do not find that the misstatement in the warrant in the instant case was plain error, *we do not analyze Franks and whether Alaska's Constitution goes beyond Franks*.

*Id.* (emphasis added).

This language in *Moreau* would have been unnecessary under Malkin's interpretation of *Davenport*. If *Davenport* established a rule that all misstatements must be excised from an affidavit, regardless of culpability by the state, then it would be unnecessary for the supreme court to be concerned about whether to adopt the *Franks* test which required a defendant attacking a search warrant to show that the state was responsible for an intentional or reckless misstatement. Malkin suggests that the supreme court might have overlooked *Davenport* in deciding *Moreau*. We think this is unlikely.[5]

---

**5.** In *State v. Witwer*, 642 P.2d 828 (Alaska App. 1982), this court also concluded that we would probably require that a misstatement in a search warrant affidavit result from police culpability, of some level, before we would require

a trial judge to suppress evidence seized under authority of the warrant. We relied on *Moreau* to conclude that this issue was an open question under Alaska law:

Malkin's case therefore requires us to decide the question which we believe *Davenport* left open. We conclude that where the defendant can show that a material misstatement of fact was made in a search warrant affidavit, evidence seized under the warrant should be suppressed unless the state shows by a preponderance of the evidence that the misstatement was not the result of the state's negligence.

We reject Malkin's suggestion that we adopt a rule which requires the court to strike any misstatement in an affidavit for a search warrant, regardless of whether the government was at fault. The California court rejected this approach in *Theodor v. Superior Court of Orange County*, 8 Cal.3d 77, 104 Cal.Rptr. 226, 241–42, 244, 501 P.2d 234, 248–49, 251 (1972):

> We reject this approach as being inconsistent with the overriding principle of reasonableness which governs the application of the Fourth Amendment to the criminal law. Instead, we conclude that only when the affiant has acted unreasonably in making factual mistakes must those errors be excised from the affidavit before testing the existence of probable cause. While undeniably misstatements impede the function of the magistrate, once it has been determined that the affiant has acted reasonably under the circumstances, little more can be required of him. To exclude evidence obtained pursuant to a warrant issued on the basis of facts upon which an affiant has reasonably relied as being accurate serves no purpose of deterrence to unlawful conduct since, by definition, the

affiant has already made a reasonable attempt to comply with the requirements of the Fourth Amendment.

. . . .

> There is no reason to hold an officer to a standard of absolute accuracy in those instances in which the inference-drawing power is reserved for the magistrate who is to issue a warrant, when the officer is only required to reach a reasonable factual deduction in those instances in which he makes the inferences and acts without a warrant. In both cases, the constitutional standard is one of reasonableness.

*See also State v. Witwer*, 642 P.2d 828, 834 n. 4 (Alaska App.1982).

The state argues that we should follow the rule established in *Franks* and require Malkin to show that Trooper Harvey made either an intentional or reckless misstatement of a material fact before the court would suppress any evidence.[6] The state points out that the *Franks* rule is widely accepted by both federal and state courts and argues that the exclusionary rule should not be applied to statements which are merely negligent. However, we believe that the rule adopted by the California court in *Theodor* is better reasoned and more consistent with the Alaska Constitution than the *Franks* rule. The court in *Theodor* held that where the defendant could show a material misstatement in an affidavit for a search warrant, the court was to suppress evidence obtained under that warrant unless the state could show that it was not negligent in including the misstatement in the affidavit. *Id.* 104 Cal. Rptr. at 244, 501 P.2d at 251. Although

---

Since suppression is ordered pursuant to the exclusionary rule whose purpose is to deter unlawful police conduct, *see, e.g., Moreau v. State*, 588 P.2d at 280, it would seem that *some deterrable police conduct would have to be involved* in presenting the false statements to the magistrate, whether material or immaterial, before their presence would justify suppression. It is not necessary for us to reach this question in light of the disposition of this case.

*Id.* at 834 n. 4 (emphasis added; citation omitted).

**6.** Malkin contends that we should not consider the position which the state raises on appeal in

this case, arguing that this position is inconsistent with the position which it took in the trial court. We conclude that the state's position on appeal is not inconsistent.

We also note that there is no contention that Trooper Harvey acted intentionally or recklessly. This case therefore does not raise the issue, reserved in *Davenport*, of whether a court should suppress evidence obtained as a result of a search warrant based on an affidavit containing an intentional, non-material misstatement of fact. *State v. Davenport*, 510 P.2d 78, 82 n. 6 (Alaska 1973).

this approach is more protective of citizen's rights than required by the fourth amendment to the United States Constitution, we believe this result is dictated by Alaska's broad constitutional guarantee of privacy.[7] In *Reeves v. State*, 599 P.2d 727, 734 (Alaska 1979), the supreme court stated:

> As we have frequently noted, the Alaska constitutional guarantee against unreasonable searches and seizures is braoder in scope than fourth amendment guarantees under the United States Constitution, at least in part because of the more extensive right of privacy guaranteed Alaska citizens by article I, section 22 of our state constitution. [Footnote omitted.]

*See Zehrung v. State*, 569 P.2d 189, 197–99 (Alaska 1977), *modified on other grounds*, 573 P.2d 858 (Alaska 1978).

Both the United States and Alaska Constitutions have guarantees against *unreasonable* searches and seizures. Alaska's caselaw in the area of searches and seizures is also consistent with this standard of reasonableness. As stated in *Keller v. State*, 543 P.2d 1211, 1219 (Alaska 1975):

> The purpose of the warrant requirement is to prevent the police from hasty, ill-advised, or *unreasonable* actions in "the often competitive enterprise of ferreting out crime." The law allows the police to infringe upon a person's fundamental right to be free from search and seizure only when such infringement is *reasonable.* [Footnote omitted; emphasis added.]

This reasonableness standard implies to us, as it did to the California court in *Theodor*,

that the state should be required to act in a reasonable, i.e., non-negligent, manner when it asks a court to invade the privacy of a citizen by way of a search warrant.

Under *Franks*, the defendant would have to show that the state was responsible for an intentional or reckless misstatement. We believe that the *Franks* standard would create an almost insurmountable hurdle. Even if a defendant could show that a material misstatement was made in an application for a search warrant, he would have difficulty meeting his burden of proving that the state acted intentionally or recklessly since the process for obtaining a search warrant is an *ex parte* proceeding controlled by the state. When the court in *Theodor* placed the burden of proof on the state to show that a material misstatement of fact was reasonable, the court stated:

> To require the defendant to prove unreasonableness would impose an insurmountable burden on him. Since the affiant knows the circumstances under which he was led to believe that the inaccurate facts were true, he alone is in a position to justify his errors as reasonable under the circumstances.

501 P.2d at 252.

We believe that once the defendant meets his burden of showing that a material misstatement was made in a search warrant affidavit, the state is better situated to show why the material misstatement was made. We conclude that the state should have to show that a material misstatement in a search warrant affidavit was based on reasonable actions.

---

**7.** The Fourth Amendment to the United States Constitution provides:

*Searches and seizures.*
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Alaska Constitution article I, section 14, provides:
*Searches and Seizures.*

The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Alaska Constitution article I, section 22 provides:
*Right of Privacy.* The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.

In applying this standard to the instant case, we conclude that Judge Hodges was correct when he found that the misstatement in paragraph six of the affidavit was material and that the search warrant affidavit did not establish probable cause when the misstatement was stricken. However, Judge Hodges did not make a finding prior to excising the misstatement as to whether Trooper Harvey was negligent.[8] We accordingly remand the case for further proceedings in conformity with this opinion.

The case is REMANDED.

---

**8.** In using the term negligence, we hold that the officer executing the affidavit is under a duty to exercise reasonable care to insure that the affidavit is accurate and breaches that duty if he *knew or reasonably should have known* that a material statement was false.