Ronald BROWER, Appellant,

v.

STATE of Alaska, Appellee.

No. 7816.

Court of Appeals of Alaska.

June 15, 1984.

Charles R. Pengilly, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Anne D. Carpeneti, Asst. Atty. Gen., Daniel W. Hickey, Chief Prosecutor and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Ronald Brower was convicted of attempted sexual assault in the first degree. AS 11.41.410; AS 11.31.100. He appeals, arguing that the method used to select the grand jury in his case violated his right to equal protection of the law under the state and federal constitutions. U.S. Const. amend. XIV; Alaska Const. art. 1, § 1. He also contends that numerous delays which occurred between his arrest and trial violated his right to a speedy trial under the Sixth Amendment to the United States Constitution and Alaska Criminal Rule 45. We affirm.

On February 22, 1981, Brower attempted to rape D.T. Brower, who was born on June 15, 1963, was seventeen years old at the time. He was initially prosecuted as a juvenile, AS 47.10.010, but the state obtained a waiver of juvenile jurisdiction from the superior court, AS 47.10.060. An indictment was subsequently returned, and Brower was convicted.

Brower argues that his grand jury was selected in violation of his rights under the equal protection clauses of the state and federal constitutions because of systematic exclusion of Alaska Natives. Brower was indicted by a grand jury convened in Fairbanks, which has a substantially smaller population of Alaska Natives than Barrow, where the offense occurred. He relies on *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). Partida, a Mexican-American, was indicted by a grand jury in Hidalgo County, Texas. The grand jury was selected through a "key

man" procedure; jury commissioners, in effect, selected people they knew to serve on grand juries. Partida argued that his grand jury substantially underrepresented Mexican-Americans. The Supreme Court announced a three-part test for evaluating such a challenge:

> Thus, in order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. This method of proof, sometimes called the "rule of exclusion," has been held to be available as a method of proving discrimination in jury selection against a delineated class. Finally, as noted above, a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing. Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case.

430 U.S. at 495–96, 97 S.Ct. at 1280, 51 L.Ed.2d at 510–11 (citations omitted; footnote omitted).

Brower argues and the state concedes that Alaska Natives are a identifiable group. He then argues:

> Alaska Natives comprise ... 76.8% of the total population of the North Slope Borough, where Barrow is located; Alaska Natives account for only ... 5.5% of the Fairbanks North Star Borough. As of 1970, 99.8% of the Native population of Barrow was Eskimo, while only 24.0%

of the Natives in Fairbanks were members of that sub-class. Assuming that the same ratios existed in 1980, these figures identify an even more radical disparity in racial composition between the communities in question: while approximately 77.6% of the population of the North Slope Borough is Eskimo, only 1.3% of the total population of the Fairbanks North Star Borough is Eskimo. Thus, although 76.8% of the community where this incident occurred is Native and 76.6% of that community is Eskimo, the community from which Mr. Brower's grand jury was selected is only 5.5% Native and 1.3% Eskimo.

 It is clear that Brower has substantially misunderstood the requisites of a *prima facie* case under *Castaneda*. In order to establish underrepresentation of a significant group under *Castaneda*, a comparison must be made between the proportion of the allegedly disfavored group that exists in the population from which the grand jury is chosen and the proportion of that group ultimately selected to serve on grand juries. It is a substantial disparity between those two figures which establishes circumstantial evidence of intentional discrimination. Here, the population or community from which the grand jury was chosen was the Fairbanks North Star Borough. There is no evidence in the record that Alaska Natives were substantially underrepresented given the proportionate membership of that group in the Borough's population. Thus, Brower has failed to establish a *prima facie* case under *Castaneda*.

Brower's argument is really quite different than the issue in *Castaneda*. He is contending that the grand jury was drawn from an improperly constituted community, an issue not addressed in *Castaneda* or the other federal cases upon which he relies. That issue was, however, addressed by the Alaska Supreme Court in *Alvarado v.*

*State*, 486 P.2d 891 (Alaska 1971). The court in that case held that a petit jury must be chosen from a fair cross section of the total community and that the concept of community encompasses the location of the alleged offense. 486 P.2d at 902. The court concluded that limiting the jury panel to those within a fifteen-mile radius of Anchorage, which excluded the village in which Alvarado's crime occurred, was not an appropriate community from which to choose a jury. The court reasoned that an urban area such as Anchorage did not adequately represent the total community. *Id.* at 901. However, the supreme court has declined to apply *Alvarado* to grand jury selection. *See Peterson v. State*, 562 P.2d 1350, 1366 (Alaska 1977). *See also Crawford v. State*, 408 P.2d 1002, 1007 (Alaska 1965) (reaffirmed in *Alvarado v. State*, 486 P.2d at 904).

 We hold that Judge Hanson did not err in denying Brower's motion to dismiss the indictment. As long as the area from which the grand jury is chosen does not underrepresent a cognizable group when compared to the state as a whole, we will find no equal protection violation. There is nothing in the record to establish that Brower's grand jury, which was chosen from the Fairbanks North Star Borough, substantially underrepresented Alaska Natives when compared to that group's representation in the state as a whole.

 Brower next argues that his constitutional right to a speedy trial, construed in light of Alaska Criminal Rule 45, was violated. Brower concedes that less than 120 days elapsed from the time he was waived to adult status to the time he entered his plea. He also concedes that Rule 45 is not directly applicable to juvenile proceedings. He argues, nevertheless, that where juvenile jurisdiction is waived, part of the time prior to the waiver should be considered.[1] We reject Brower's argu-

1. Brower argues that Rule 45 is "a valuable guide" in determining whether a juvenile's right to speedy trial has been violated. *See* Alaska Const. art. I, § 11; U.S. Const. amend. VI. He relies on *In re R.D.S.M.*, 565 P.2d 855, 858 n. 13

(Alaska 1977). *But cf. State v. Williams*, 681 P.2d 313, 315 (Alaska 1984) (Rule 45 will generally provide a speedier trial than is constitutionally required).

ment. The supreme court has specifically held that Rule 45 does not apply to juvenile proceedings. *In re R.D.S.M.*, 565 P.2d 855, 858 (Alaska 1977). We see no reason to modify *In re R.D.S.M.* where a juvenile is waived to adult court. We hold that Rule 45 begins to run on the day the waiver order is signed. Courts interpreting similar speedy trial provisions have reached the same result. *See, e.g., People v. Woodruff,* 88 Ill.2d 10, 58 Ill.Dec. 869, 871–72, 430 N.E.2d 1120, 1122–23 (1981); *State v. White,* 223 N.W.2d 173, 175 (Iowa 1974); *State v. Howell,* 89 N.M. 10, 546 P.2d 858, 859 (1976); *State ex. rel. Williams v. Court of Common Pleas,* 42 Ohio St.2d 433, 329 N.E.2d 680, 681 (1975); *State v. Jacks,* 25 Wash.App. 141, 605 P.2d 363, 364–65 (1980). *Cf. Commonwealth v. Bell,* 245 Pa.Super. 164, 369 A.2d 345, 346 (1976), *aff'd mem.,* 481 Pa. 229, 392 A.2d 691 (Pa.1978). *But cf. State v. Benton,* 337 So.2d 797, 798 (Fla.1976) (juvenile speedy trial rule requires contrary result).

We also reject Brower's constitutional argument. In order to show a violation of his constitutional right to a speedy trial, Brower must show prejudice resulting from any delay. *Springer v. State,* 666 P.2d 431, 434–35 (Alaska App.1983). Brower makes no showing of prejudice. He argues that the supreme court in *In re R.D.S.M.* suggested that Rule 45, which eliminates any need to show prejudice, applies to juvenile proceedings by analogy. However, our review of that case indicates that Brower is in error. The trial court did not err in rejecting Brower's contention that he was denied his right to a speedy trial.

The judgment of the superior court is AFFIRMED.