**Richard CLARK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Lucy CLARK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. 7773, 7815.**

Court of Appeals of Alaska.

Aug. 9, 1985.

John Marston Richard, Anchorage, for appellant Richard Clark.

Kathleen Strasbaugh, Asst. Public Defender, Barrow, and Dana Fabe, Public Defender, Anchorage, for appellant Lucy Clark.

Michael S. McLaughlin, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

This is the consolidated appeal of Lucy and Richard Clark who were convicted, following a joint trial, of possession of marijuana for purpose of sale in violation of former AS 17.12.010.

Evidence introduced against them at trial included marijuana, baggies, cash, and a set of weighing scales seized at their residence in Barrow in execution of a search warrant on February 27, 1982. The warrant was issued by a magistrate based on the sworn statement of Public Safety Officer Jeff Deutsch concerning information given him by informant Henry Kignak. We hold that the sworn statement was insufficient to allow the magistrate to make an independent probable cause determination, and reverse the Clarks' conviction. We address several other points the Clarks raise on appeal since these are likely to arise again in the event this case again comes to trial.

Jeff Deutsch was employed as a Public Safety Officer beginning July 1981. In the course of his employment, Deutsch occasionally brought injured people to the hospital in Barrow. In January or February of 1982, Deutsch met Kignak, who worked at the hospital. Kignak visited Deutsch at home on more than one occasion, and on one such occasion on the 21st or 22nd of February 1982, agreed to give Deutsch information concerning drug sales in Barrow. Kignak was from Barrow, but had just recently returned after living in Fairbanks. He was eighteen years old and on probation for theft offenses.

Five days after Kignak agreed to provide Deutsch with information, Deutsch applied to Magistrate Jeanne Cross for a search warrant giving the following sworn testimony:[1]

1. Your affiant, Jeff Deutsch, is a Public Safety Officer with the North Slope Borough and has been so employed since July 13, 1981.

2. Your affiant is investigating the sale of marijuana on the part of Rick Clark.

3. Your affiant has participated in the investigation of approximately half a dozen drug law violation cases during his course of employment.

4. On February 27, 1982 at about 8:40 a.m. your affiant received information from a confidential informant, ID#JDD1. Your affiant has received information from this informant in the past and has found this information to be accurate and reliable.

5. Your affiant was advised by ID#JDD1 on February 27th, 1982 at approximately 8:42 A.M. that:

a. At about 7:00 P.M. on Friday the 26th of February 1982, he went to a single story, unpainted residence at Block 13, on Lot 3 owned by Ernest Kignak and rented by Rick Clark.

---

**1.** Though in affidavit form, the averments were apparently read orally to the magistrate.

b. He was taken to the residence by a friend for the purpose of purchasing marijuana.

c. He purchased marijuana on February 26, 1982 at approximately 7:00 p.m.

d. He purchased the marijuana inside the residence rented by Rick Clark.

e. He purchased the marijuana for $300.00 with (3) one-hundred dollar bills.

f. He purchased the marijuana from an individual who he knows as Rick Clark, who is employed at the Sanitation Department.

g. He smoked a portion of the marijuana and experienced a feeling he described as "high".

h. He observed Clark go into the bedroom of the residence and take quantity of marijuana from a larger bag containing marijuana.

6. Your affiant personally knows that by smoking marijuana a euphoric feeling is experienced, commonly described as getting "high".

7. Your affiant was advised by Officer Lew Wood that he personally knows Rick Clark to be employed by the North Slope Sanitation Department on February 27, 1982 at 5:20 P.M.

8. Your Affiant was advised by Lew Wood on February 27, 1982 at 5:20 p.m. that he personally knows that Rick Clark has been the subject of drug investigations by the North Slope Department of Public Safety in the past.

9. Your Affiant was advised by Lew Wood on February 27, 1982 at 5:20 p.m. that he personally knows the Ernest Kignak residence to be located on the west side of the intersection of Tahak Street and Karluk Street and that it is a single story frame dwelling, unpainted, with the door way facing the beach between the Kenneth Brower, Sr. residence and the Arnold Brower Sr. residence, Block 13, Lot 3.

10. Your affiant prays for the issuance of a daytime search warrant for the residence of Rick Clark as your affiant believes that such a search will result in the recovery of evidence to support a charge of sale of drugs.

The warrant was granted and executed on the 27th and incriminating items were seized. During the course of the search Lucy Clark was asked to open a locked footlocker, which she declined to do until the officers indicated they would cut the lock off with bolt cutters.

The Clarks were subsequently indicted. The defendants moved to dismiss the indictment because of improper grand jury composition, arguing that because Fairbanks had been designated as a special situs of the grand jury, Inupiat people were systematically excluded.[2] This motion was denied.

The Clarks also moved for suppression of all items seized pursuant to execution of the search warrant. This motion was denied, and denied again after the taking of further evidence on reconsideration.

At trial, testimony was received that Lucy Clark initially refused to unlock the footlocker. The prosecution commented on this refusal in its opening statement and closing argument.

### I.

■ The Clarks contend that the grand jury which indicted them systematically excluded Inupiat people, violating their rights to equal protection under the law. They claim such exclusion was the result of convening the grand jury in Fairbanks rather than in Barrow. We rejected an identical argument in *Brower v. State*, 683 P.2d 290 (Alaska App.1984). *Brower* is controlling here.

### II.

The Clarks contend that evidence presented against them was obtained by an illegal search and seizure which violated their rights under the fourth amendment of

---

**2.** The state contends that Richard Clark did not join this motion, and did not preserve this issue for appeal.

the United States Constitution and article I, section 14 of the Alaska Constitution. Both provisions guarantee protection against unreasonable search and seizure. Specifically, they argue that information presented to the magistrate issuing the search warrant was insufficient to support the magistrate's probable cause finding. We agree.

■ The sufficiency of an informant's tip as the basis for a finding of probable cause supporting the issuance of a search warrant has long been evaluated according to the test formulated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509. 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See Kralick v. State*, 647 P.2d 1120 (Alaska App.1982). This test requires that the magistrate be informed sufficiently concerning both (1) the informant's basis of knowledge and (2) the veracity of the information provided, shown either by indications of the informant's credibility or of the information's credibility. *Id.* at 1123. In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court held that the two prongs of the *Aguilar-Spinelli* test were factors in the inquiry of whether, under the totality of the circumstances, there is probable cause to believe that contraband or evidence is located in a particular place. 462 U.S. at 230 and n. 6, 103 S.Ct. at 2328 and n.6, 76 L.Ed.2d at 543 and n.6. Under the Gates approach, the two prongs need not be independently satisfied in all cases to comply with the fourth amendment. In this case we find that the requirements of neither the *Aguilar-Spinelli* test nor of *Illinois v. Gates* are satisfied.

The "basis of knowledge" prong of the *Aguilar-Spinelli* test is satisfied by an averment that the informant is passing on what is to him first-hand information. 1 W.LaFave, *Search and Seizure,* section 3.3 at 536 (1978). *See Stanley v. State,* 19 Md.App. 507, 313 A.2d 847 (1974). In this case, the informant's knowledge was allegedly obtained by first-hand observation. Thus, this prong is satisfied.

It is the "veracity" prong which this sworn statement fails to satisfy. The state urges us to apply a relaxed standard for the veracity showing in this case, arguing that Kignak was a "citizen informant."

In *Erickson v. State,* 507 P.2d 508, 517–18 (Alaska 1973), the court delineated the approach to be taken in evaluating the trustworthiness of "citizen informers:"

When information is provided by a cooperative citizen, or an informant not from the criminal milieu there is less need for establishing credibility of the informant. The court in *State v. Paszek,* [50 Wis.2d 619, 184 N.W.2d 836 (1971)] stated:

A different rationale exists for establishing the reliability of named 'citizen-informers' as opposed to the traditional idea of unnamed police contacts or informers who usually themselves are criminals. Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out of revenge against the subject. The nature of these persons and the information which they supply convey a certain impression of unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown. One practical way of making such a showing is to point to accurate information which they supplied in the past.

An ordinary citizen who reports a crime stands on a much different footing. He acts with an intent to aid the police in law enforcement because of a concern for society or his own safety. Since the citizen informer often provides information only once, there is little opportunity to establish credibility or reliability in the most common manner—comparison with accurate information provided in the past.

We hold that a valid arrest may be made on information provided by a "citizen informer" and that the informer's prior reliability need not be established before the arrest. The only caveat

placed on such a rule is that some of the details of the information must be verified before arrest occurs. [Footnotes omitted.]

■ This approach was applied in *Resek v. State*, 644 P.2d 877 (Alaska App.1982), where we found that the informants were a trustworthy and reliable couple providing information based on a sense of civic duty and a concern for the safety of others. *Id.* at 878–79. The facts of the present case place Kignak in the criminal milieu. He was being cultivated by Officer Deutsch as a police informant. The information provided by him should not be afforded the inherent presumption of credibility attached to reports of citizen informants.

■ Judge Jeffery's conclusion that the affidavit was sufficient to support the warrant was based on his determination that a citizen informant was involved. Since we have concluded that Kignak was not a citizen informant, the warrant may only be found valid if other sufficient indicators of veracity are present. The averments here are insufficient.

Officer Deutsch told the magistrate:

Your affiant has received information from this informant in the past and has found this information to be accurate and reliable.

A general assertion by an officer that his informant is a credible or reliable person is insufficient to support a finding of veracity because it fails to identify the underlying circumstances from which the officer concluded the informant was credible. *See*

*Aguilar v. Texas*, 378 U.S. at 114–115, 84 S.Ct. at 1514, 12 L.Ed.2d at 729; *Spinelli v. United States*, 393 U.S. at 416, 89 S.Ct. at 584, 21 L.Ed.2d at 643–44. Similarly, an officer's general conclusion that unspecified past information has proven "accurate and reliable" should not be used as verfication where no information has been presented to the magistrate concerning how this conclusion was drawn. *See* LaFave, *supra*, at § 3.3(b), 508–22. The facts of this case, in which the officer's conclusion gives the impression that his previous contact with this informer has been greater than it actually was,[3] illustrate why such conclusions are properly left to the detached magistrate.

The "corroboration" of the tip presented to the magistrate was likewise insignificant. That Kignak knew where Clark worked, and that Kignak knew where his own grandfather lived, adds nothing to the veracity of his story.[4] The statement made to the magistrate that Clark was already suspected of involvement in this type of activity might add somewhat to a veracity determination, *see Keller v. State*, 543 P.2d 1211, 1218 n. 12 (Alaska 1975), but this type of corroboration again presents the shortcoming of being a police conclusion rather than a fact from which the magistrate can draw an independent conclusion.

■ In some circumstances declarations against penal interest contain a degree of inherent credibility sufficient to support a finding of probable cause. *State*

3. The only information Kignak provided Deutsch in the past was a list given Deutsch within the previous week of the names of six individuals Kignak believed were involved in selling drugs or alcohol. Deutsch concluded this information was "accurate and reliable" because all were suspected by another officer of dealing in drugs and alcohol. No evidence was in fact located, and no arrests made, based on this prior information given by Kignak. *Cf. McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) (informant's credibility established by officer's testimony that past information from this informant resulted in numerous arrests and convictions); *Schmid v. State*, 615 P.2d 565, 575 (Alaska 1980) (informant's credibility established by officer's testimony that Cus-

toms agent had known informant for four years and had found informant extremely reliable in at least ten previous cases where this informant's tip resulted in seizure of narcotics).

4. This is not to say innocent corroboration cannot add to the determination of veracity. In many cases it will. *See Schmid v. State*, 615 P.2d at 576–77 and n. 14. "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Illinois v. Gates*, 462 U.S. at 244 n. 13, 103 S.Ct. at 2335 n. 13, 76 L.Ed.2d at 552 n. 13. The corroboration here is not in the least bit "suspicious."

*v. Malkin,* 678 P.2d 1356, 1359 and n. 4 (Alaska App.1984), *petition for hearing granted* (Alaska, May 7, 1984). Kignak, a probationer, told Deutsch he purchased marijuana from Clark. Though the state did not argue that this doctrine should apply in this case, we have considered whether it might provide the veracity needed for a probable cause finding. We conclude that it does not for a variety of reasons. First, it is not at all clear that Kignak's conduct was, at the time, against the law. Former A.S. 17.12.110; *Ravin v. State,* 537 P.2d 494 (Alaska 1975). Absent here is the potential for punishment which gives admissions against penal interest their reliability. Second, the magistrate was not told that the informant was on probation, and the conditions of probation are not included in the record on appeal. The fact of Kignak's probation could not have contributed to the magistrate's determination, and does not affect our decision. Third, to whatever extent this is considered an admission against penal interest, the relationship developing between Kignak and Deutsch was that of a "protected police 'stool pigeon,' whom the courts have always treated with a healthy skepticism as inherently suspect." *Stanley v. State,* 19 Md.App. 507, 313 A.2d 847 (1974). LaFave, defining this type of informant as "a person whose indiscretions are tolerated by the police on a continuing basis in exchange for information and leads given by him from time to time," notes that "[a]n admission against

penal interest by such a person carries little weight, for he will perceive little risk in admitting such indiscretions as possession or use of drugs in light of the fact that past admissions of the same type have not led to his arrest or prosecution." LaFave, *supra,* at 526 (footnote omitted). Finally, unlike the statement in *Malkin,* this statement was made directly and knowingly to a police officer and is not as reliable as a double hearsay statement against penal interest.[5]

■ We give great deference to the probable cause determination of a magistrate. *See, e.g., Linne v. State,* 674 P.2d 1345, 1355 (Alaska App.1983). However, where no information is presented to the magistrate from which he can make a *detached and independent* determination of probable cause, the warrant cannot be deemed valid. *See Spinelli v. United States,* 393 U.S. at 415, 89 S.Ct. at 588–89, 21 L.Ed.2d at 643; *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

### III.

■ At trial, counsel for Clark objected to the introduction into evidence of a set of weighing scales seized during execution of the search warrant. They argued that an insufficient foundation had been laid to show the relevance of the scales to the issue of intent to sell marijuana. The prosecutor argued that the scales were rele-

5. This was discussed in *Malkin,* 678 P.2d at 1359 n. 4:

> LaFave has noted the credibility inherent in circumstances such as existed here, where a reliable informant relates statements to an affiant, which were told to him by a secondary source who is unaware of the informant's police connections.
> In the hearsay-upon-hearsay situation, as where an informant of established reliability tells police what someone else has told him, there is a need to establish veracity with respect to each person in the hearsay chain. This can be done by showing that these other links made admissions against their penal interest. Indeed, as a general proposition there is more reason to rely upon such admissions than admissions made directly to police, for in the latter situation there is always the

> chance that the informer is a stoolie who perceives he can admit to criminality without significant risk. Thus, in *Comi v. State,* [26 Md.App. 511, 338 A.2d 918 (1975) ] upholding an affidavit reciting what a reliable police informer said an admitted burglary participant had told him, the court correctly reasoned:
>> The secondary source here was not a paid police informer, nor promised any sort of inducement to speak. In fact, he had no way of knowing his information would eventually arrive at police headquarters. He was merely relating an occurrence to a friend. We conclude that Hustler had no motive to lie and his information was conveyed in circumstances consistent with its reliability.
> 1 W. LaFave, *Search and Seizure,* § 3.3(c) at 530 (1978) (footnotes omitted).

vant, in conjunction with the large amount of money and the large amount of marijuana found in close proximity, to show intent to sell. The court found that a sufficient foundation had been laid through the testimony of Officer Lew Wood, and admitted the scales into evidence. Wood's testimony indicated where the scales had been found and that it had been seized, and that in other cases involving marijuana sale in which he had participated, scales had been seized.

Alaska Rule of Evidence 104(b) provides:

*Relevancy Conditioned on Fact.* When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

The Clarks argue that Wood's testimony did not adequately support a finding that the condition of fact—*i.e.* that scales are probative of intent to sell—had been fulfilled. No case law is cited in support of this contention. "The admissibility of evidence is largely within the trial court's discretion and its rulings will not be overturned on appeal in the absence of an abuse of discretion." *Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980); *Poulin v. Zartman,* 542 P.2d 251, 260 (Alaska 1975). A set of scales is not highly prejudicial. Its probative value was to some degree indicated by Officer Wood, albeit weakly. In context, it could have a "tendency to make the existence of" the defendants' intent to sell "more probable ... than it would be without the evidence." A.R.E. 401 (definition of relevant evidence). Officer Wood's testimony was sufficient to allow the court to make this determination. Admission of this evidence was not an abuse of discretion.

## IV.

■ At trial, testimony was received that Lucy Clark initially refused to unlock a footlocker at the Clark residence during execution of the search warrant. The prosecution commented on this refusal in both opening and closing remarks. Evidence of a refusal to consent to a search is inadmissible regardless of the legality of the search. *Elson v. State,* 659 P.2d 1195, 1197, 1199 (Alaska 1983). *See also Padgett v. State,* 590 P.2d 432 (Alaska 1979); *Bargas v. State,* 489 P.2d 130 (Alaska 1971). If the Clarks are retried, evidence of Lucy's initial refusal to unlock the footlocker should not be introduced.

The convictions are REVERSED.

BRYNER, Chief Judge, concurring in part and dissenting in part.

I would hold that the warrant was properly issued. The information supplied in Officer Deutsch's affidavit was at least minimally adequate to permit the magistrate to evaluate the credibility of hearsay statements attributed to Kignak. In reaching the opposite conclusion, the majority of the court is, I believe, unduly skeptical of the information set out under oath in the affidavit and walks too readily in the shoes of the magistrate, to whom, at this stage, considerable deference is owed.

Since I agree with the majority that the trial court erred in admitting evidence of Lucy Clark's refusal to open the footlocker, and since in my judgment that error cannot be deemed harmless as to her, I concur in the court's decision to reverse Lucy Clark's conviction. However, the erroneously admitted evidence related almost exclusively to the issue of Lucy Clark's knowledge and intent. It could have had no significant impact on the jury's verdict as to Richard Clark; I would find the error harmless as to Richard Clark and affirm his conviction.

Accordingly, I concur with the court's decision to reverse Lucy Clark's conviction but dissent from its decision to reverse as to Richard Clark.