**STATE of Alaska, Petitioner,**

v.

**Constantine MALKIN, Respondent.**

**No. S–393.**

Supreme Court of Alaska.

July 25, 1986.

10. Our decision renders moot all remaining is-    sues raised by the parties.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for petitioner.

Charles R. Pengilly, Asst. Public Defender, Fairbanks, Dana Fabe, Public Defender, Anchorage, for respondent.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### I. INTRODUCTION

This case requires us to determine the extent to which the validity of statements in an affidavit supporting a search warrant may be challenged. While other jurisdictions have decided this question,[1] we are presented with a question of first impression for Alaska.[2]

The court of appeals concluded that where an affidavit contains material misstatements, such that there would not be probable cause to issue a search warrant after the misstatements were excised, the warrant and evidence seized pursuant thereto must be suppressed unless the state demonstrates that the erroneous statements were not negligently included. *State v. Malkin*, 678 P.2d 1356, 1362 (Alaska App.1984).

### II. FACTUAL AND PROCEDURAL BACKGROUND

Alaska State Trooper Roderick Harvey obtained a search warrant for respondent Constantine Malkin's Fairbanks residence in March 1982.[3] Relying on the warrant,

---

1. The California Supreme Court decided that: a defendant may challenge the factual veracity of an affidavit in support of a warrant and if statements contained therein are demonstrated to be false and if the affiant was unreasonable in believing the truth of such information, those facts must be excised from the affidavit and probable cause tested from the remaining truthful information. *Theodor v. Superior Court of Orange County*, 8 Cal.3d 77, 104 Cal.Rptr. 226, 243, 501 P.2d 234, 251 (1972). A later case further determined that *deliberate* insertion of misstatements, whether material or not, called for invalidating the warrant and excluding any evidence seized in a search pursuant to the warrant. *People v. Cook*, 22 Cal.3d 67, 148 Cal.Rptr. 605, 608, 583 P.2d 130, 133 (Cal.1978). Passage of Proposition 8 in 1982 by California voters effectively repealed *Theodor* and *Cook*, and made California law co-extensive with federal law.

    The United States Supreme Court decided that under the Fourth Amendment only the intentional or reckless inclusion of misstatements would be subject to attack; "[a]llegations of negligence or innocent mistake are insufficient." *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667, 682 (1978).

2. This court has previously acknowledged that a false affidavit supporting a search warrant is susceptible to attack. *State v. Davenport*, 510 P.2d 78, 82 (Alaska 1973). We have also acknowledged that a false affidavit can nullify a search warrant under appropriate circumstances. *Moreau v. State*, 588 P.2d 275, 279 (Alaska 1978). Neither *Davenport* nor *Moreau*, however, determined the conditions governing such challenges.

3. Harvey's affidavit in support of the warrant stated in full:

    1. Your affiant is a Sergeant with the Alaska State Troopers and is currently assigned to a drug investigation unit for the purposes of investigating illegal drug activities in the Fairbanks area.

    2. On March 9, 1982, at approximately 2 a.m., your affiant received information from JG-14 via telephone. JG-14 indicated that he heard approximately 6 pounds of cocaine had arrived in Fairbanks. At that time JG-14 indicated an individual known as Arthur MacArmour had an ounce of cocaine from this supply.

    3. On March 9, 1982, at approximately 1:30 p.m., JG-14 again contacted your affiant by phone. He stated that "Mac" was dissatisfied with the quality of drugs he had obtained. JG-14 saw a white powder and chunks contained in a clear plastic zip lock baggie with a red line across the top, in the possession of "Mac."

    4. JG-14 stated that on March 9, 1982, he transported "Mac" to an apartment in the Sandvik Apartment Complex where a red Dodge Challenger with chro[m]e wheels which in the past JG-14 had seen "Mac" operating. According to JG-14, "Mac" entered one of the apartments and returned with a brown paper bag. "Mac" indicated to JG-14 that it contained cutting material.

    5. JG-14 further stated that on March 9, 1982, he transported "Mac" to the residence of 144 Pepperdine Street. The description of the residence was a brown two story wood exterior dwelling with wooden balcony on back side, stairs in center of the front, picture win-

State Troopers searched Malkin's residence, found nearly twenty ounces of cocaine and related drug paraphernalia, and arrested Malkin and Jesus Gutierrez.[4] Malkin was charged with two counts of possession of cocaine.

In a pretrial motion Malkin moved to suppress evidence taken during the search of his residence on the ground that Trooper Harvey or Paul Baum (the informant, also known as JG–14 in the affidavit) made material misstatements in reckless disregard for the truth. The state opposed the motion and filed an affidavit from Baum in support of its opposition. Baum's affidavit, however, revealed an error in paragraph 4 of the affidavit. Baum explained that, " 'Mac' did not tell me that the bag contained cutting material. I assumed it did contain cutting material...."

The superior court held an evidentiary hearing at which Baum described another error in the affidavit, this time in paragraph 6. Baum explained at the hearing that MacArmour never left the baggie of white powder at Malkin's residence; he (MacArmour) only left the bag which Baum assumed contained cutting material. MacArmour, explaining why he had not left the baggie, had told Baum that the occupants were "too loaded and couldn't take care of business."

The superior court granted Malkin's motion to suppress because, having stricken the misstatements from paragraphs 4 and 6, it found the remaining recitals insufficient to establish probable cause for a search warrant. The court subsequently denied the state's motion for reconsideration and ordered the evidence suppressed and the indictment dismissed. The state appealed to the court of appeals.

The court of appeals adopted the rule that a defendant may challenge negligent misstatements of fact put in an affidavit for a search warrant. *Malkin*, 678 P.2d at 1362. The court of appeals defined negligence according to the civil concept of whether the officer knew or reasonably should have known that the material statement was false. *Id.* at 1364 n.8. If the affidavit did not provide probable cause after the misstatements were excised, the remedy approved was invalidation of the warrant and suppression of the fruits of the search. *Id.* at 1362. Because the superior court made no finding on the question of Trooper Harvey's negligence, the court of appeals remanded the case so that the

---

dow right of front side, a garage on the lower level located at 144 Pepperdine Street in University West Subdivision. JG–14 had been in this residence previously and knew the primary occupant and controlling party to be Constantine Malkin. JG–14 had previously showed your affiant this residence and your affiant has personal knowledge of the aforementioned description of the residence.

6. On March 9, 1982, while at 144 Pepperdine Street, "Mac" went inside to return the baggie of white powder and the bag of cutting material. When "Mac" returned to JG–14 in the vehicle, he was not carrying any of the aforementioned items.

7. JG–14 stated that "Mac" indicated to him that there were four people in the residence of 144 Pepperdine including Jesus (last name unknown), two white female adults, and Constantine Malkin. "Mac" also indicated that these individuals were all "screwed up" on cocaine.

8. JG–14 stated that "Mac" had informed him that the six pounds of cocaine when it arrived was in one brick, and that one pound had gone to Barrow, one pound to Prudhoe Bay, and the rest unaccounted for.

9. JG–14 has been receiving information over the past several months in regards to transportation and sale of cocaine from San Francisco to Fairbanks, Alaska.

10. On December 30, 1981, Sgt. Harvey and Sgt. Grimes of Alaska State Troopers had contact with Constantine Malkin at the Fairbanks Memorial Hospital. At that time he confirmed the information being passed on by JG–14.

11. JG–14 is an informant known by your affiant who has furnished reliable information in the past. Previous search warrants have been obtained from his information with reliable results.

12. It is believed that from JG–14 information and past investigation there is evidence of cocaine and sale of cocaine at the residence located at 144 Pepperdine Street.

Further your affiant sayeth naught.

**4.** Gutierrez was tried and convicted by a jury. The court of appeals reversed his conviction in *Gutierrez v. State*, 673 P.2d 287 (Alaska App. 1983).

findings could be made. *Id.* at 1364. Thereafter this court granted the state's petition for hearing.

## III. DISCUSSION

Misstatements in affidavits come within the scope of Article I, section 14, of the Alaska Constitution which protects citizens "against unreasonable searches and seizures," and which commands that "[n]o warrants shall issue, but upon probable cause, supported by oath or affirmation. . . ." These constitutional safeguards would quickly lose their prophylactic value if courts refused to verify the veracity of statements proffered in support of search warrants. As we have remarked previously, "since search warrants issue *ex parte*, the courts must be willing to investigate the truthfulness of the material allegations of the underlying affidavit in order to protect against the issuance of search warrants based on conjured assertions of probable cause." *Davenport,* 510 P.2d at 82.

In order to carry out these constitutional safeguards we adopt, in part, the rule established by the United States Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978), that only intentional or reckless misstatements may be excised from affidavits. We do not, however, follow *Franks* in placing the full burden of proof on the defendant. 438 U.S. at 156, 98 S.Ct. at 2676, 57 L.Ed.2d at 672. The rule we embrace is that once the defendant has pointed out specifically that statements in the affidavit are false, together with a statement of reasons in support of the assertion of falsehood,[5] the burden then shifts to the state to show by a preponderance of the evidence that the statements were not made intentionally or with reckless disregard for the truth. If the state does not meet this burden then the misstatements must be excised and the remainder of the affidavit tested for probable cause.[6]

We are not persuaded that excising an officer's negligent misstatements is necessary or appropriate to serve the Alaska Constitution's protection against unreasonable searches and seizures. The two central purposes behind the exclusionary rule are deterrence and the preservation of judicial integrity. *Moreau v. State,* 588 P.2d 275, 280 (Alaska 1978). In our view, neither purpose is served by excising an officer's negligent misstatements. It is unlikely that negligent misstatements can be deterred. At least, it is far less likely than the possibility of deterring perjurious or reckless misstatements. *See* 2 W. LaFave, Search and Seizure § 4.4(b), at 65 (1978).[7] An officer acting quickly on an informant's tip is unlikely to have the time to carefully check every lead, regardless of whether

5. In regard to the showing the defendant is required to make the Supreme Court stated the following:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks,* 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682.

6. If, in fact, the police officer affiant intentionally made the misstatements then the search warrant should be invalidated whether or not probable cause would remain from the affidavit after the misstatements were excised. A deliberate attempt to mislead a judicial officer in a sworn affidavit deserves the most severe deterrent sanction that the exclusionary rule can provide. Further, the fact that the officer has lied puts the credibility of the officer and of the entire affidavit into doubt. *See Cook,* 148 Cal. Rptr. at 615–16, 583 P.2d at 140–41. The California Supreme Court ruled that where the misstatements were alleged to have been made deliberately the full burden should be on the defendant to prove intent. *Id.* 148 Cal.Rptr. at 617–19, 583 P.2d at 142–44.

7. "[T]he deterrence of negligence may not be impossible, but it is a far more uncertain matter than the deterrence of perjury and recklessness."

"negligent" statements will be excised.[8] The possibility that negligent misstatements may be included in the affidavit will not impugn the integrity of the judicial system either, by making courts "accomplices in the willful disobedience of a Constitution they are sworn to uphold." *Elkins v. United States*, 364 U.S. 206, 223, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669, 1681 (1960).

▮ Application of the exclusionary rule reflects a balance between the interests of society in being able to use reliable evidence against criminal defendants and the interests of society in not having its citizens' privacy unreasonably invaded. *Cf. Nathanson v. State*, 554 P.2d 456, 458 (Alaska 1976); *Smith v. State*, 510 P.2d 793, 797 (Alaska), *cert. denied*, 414 U.S. 1086, 94 S.Ct. 603, 38 L.Ed.2d 489 (1973) (whether a person's subjective expectation of privacy from being searched is "reasonable" depends on whether it is an expectation that society is prepared to recognize as "reasonable"). The most important protection against unreasonable invasions of privacy is the requirement that, except in special circumstances, the police must go before a neutral judicial officer before they conduct a search. This protection is present, by definition, in the situation here. The judicial officer has the ability and duty to make a searching inquiry as to the validity of the facts in the police officer's affidavit.[9] To add an after the fact requirement that negligent statements be excised will do little to add to this protection, and may put an unnecessary burden on the police.[10] Given the difficulty and uncertainty of drawing the line between "negligent" and "innocent" misstatements, such a requirement may in practice result in an increase in unreasonable invasions of privacy by discouraging the police from submitting their evidence to a judicial officer before they search.

As indicated previously, we decline to follow that portion of the *Franks* rule which places on the defendant the full burden of proving that intentional or reckless misstatements were made. It is consistent with traditional notions of placing burdens

8. In reaching our conclusion that negligent misstatements do not have to be excised we note our agreement with *State v. Causey*, 257 N.W.2d 288, 292 (Minn.1977), where the court stated in part:

> The difficulties of distinguishing innocent and negligent misrepresentations, as well as subjecting the investigative skill of the officer to second-guess judicial hindsight, outweigh the deterrent effects to be achieved by applying the exclusionary rule to negligent misrepresentations.

*See also* 2 La Fave § 4.4(b), at 65.

9. The Supreme Court observed in *Franks*, 438 U.S. at 169–170, 98 S.Ct. at 2683, 57 L.Ed.2d at 681, that:

> [A]llowing an evidentiary hearing, after a suitable preliminary proffer of material falsity, would not diminish the importance and solemnity of the warrant-issuing process. It is the ex parte nature of the initial hearing, rather than the magistrate's capacity, that is the reason for the review. A magistrate's determination is presently subject to review before trial as to *sufficiency* without any undue interference with the dignity of the magistrate's function. Our reluctance today to extend the rule of exclusion beyond instances of deliberate misstatements, and those of reckless disregard, leaves a broad field where the

magistrate is the sole protection of a citizen's Fourth Amendment rights, namely, in instances where police have been merely negligent in checking or recording the facts relevant to a probable-cause determination. (emphasis in original)

10. As one commentator said:

> It is also important not to lose sight of the teaching of the Supreme Court in *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 689 (1965), that
>
> affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common-law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
>
> Those considerations might well be thought to justify the *Franks* Court's unwillingness to hold search warrants vulnerable to the objection that they are based upon negligent misrepresentations.

2 LaFave § 4.4(b), at 65 (footnotes omitted).

of proof that once the defendant has shown the affidavit contains material false statements, the burden should shift to the prosecution to justify these misstatements by showing that they were not made intentionally or recklessly. Since it is the police officer alone who knows the circumstances under which he made the statements in the affidavit, to make the defendant prove intent or recklessness would probably impose an insurmountable burden on him. *See* 2 LaFave § 4.4(d), at 69–70. This would seem to be particularly true where the informant on whom the officer relied in the affidavit was unnamed. *Id.* at 70–71. Placing such a burden on defendant would render the test practically meaningless so as to have little deterrent effect.

We hold, therefore, that the proper way to strike the balance between societal interests in the use of reliable evidence and in protection from unreasonable invasions of privacy is to excise misstatements from the police officer's affidavit if he cannot show that they were not made intentionally or recklessly.

It necessarily follows that the case must be remanded to the court of appeals with directions to remand to the superior court to determine whether Trooper Harvey included the misstatements in the affidavit intentionally or with reckless disregard of the truth.

REVERSED and REMANDED.

COMPTON, J., dissents.

COMPTON, Justice, dissenting.

I would affirm the decision of the court of appeals. Therefore, I dissent.

The rule adopted by this court is as follows:

1. The defendant must point out (prove? by what burden?) the false statement (misstatement). Thereafter, the state must prove by a preponderance of the evidence that the misstatement was not intentionally or recklessly made.

2. If the misstatement was intentionally made, the search warrant obtained thereby will be invalidated regardless of the presence of probable cause after excision of the misstatement.

3. If the misstatement was recklessly made, the misstatement will be excised and the remainder of the affidavit tested for probable cause.

4. If the misstatement was negligently or innocently made, it will not be excised.

My principal disagreement with the court is over its willingness to condone the use of negligently made misstatements in search warrant affidavits. Although as citizens we are protected against "unreasonable" searches,[1] probable cause to search may nonetheless be based upon no more than a negligently made misstatement. A law enforcement officer executing an affidavit in support of a search warrant who *reasonably* should know that a statement is false,[2] but does not, may obtain a valid warrant. By definition the officer is acting unreasonably, and the search which could not have occurred but for the officer's unreasonable conduct is in my view "unreasonable."

The court accepts that "difficulties of distinguishing innocent and negligent misrepresentations" and its own proclaimed "uncertainty of drawing the line between 'negligent' and 'innocent' misstatements," justify not excluding negligent misstatements. Surely the court jests. It does not point to any problems with the test for negligence subscribed to by the court of

---

1. Alaska Const. art. I, § 14, provides:
   The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

2. I accept the following definition subscribed to by the court of appeals:
   In using the term negligence, we hold that the officer executing the affidavit is under a duty to exercise reasonable care to insure that the affidavit is accurate and breaches that duty if he knew or reasonably should have known that a material statement was false.

appeals. It offers no test to determine recklessness. Furthermore, it ignores the fact that judges and juries, throughout this state and the United States generally, are required daily to differentiate between negligent and non-negligent conduct in cases involving extraordinarily complex questions. The court denigrates the capability of the trial bench by suggesting it cannot make such a determination in this context.

In my view the court of appeals ably justified adopting of the rule of *Theodor v. Superior Court of Orange County*, 8 Cal.3d 77, 104 Cal.Rptr. 226, 501 P.2d 234 (Cal.1972), based upon that decision's consistency with Alaska constitutional provisions, which textually and as interpreted go farther in protecting privacy than provisions of the United States Constitution or the Minnesota constitution interpreted in *State v. Causey*, 257 N.W.2d 288 (Minn. 1977). The analysis need not be repeated here.

I also believe the court's analysis of the exclusionary rule is incorrect and incomplete. First, the court should determine whether the Alaska constitution has been violated. If it has not, discussion of the exclusionary rule or any other remedy is irrelevant. Second, if a violation is found, the appropriate remedy must be determined. It may be the exclusion of evidence, but as this case demonstrates, does not have to be. Thus the intentional inclusion of a misstatement will result in application of the exclusionary rule—the search warrant will be invalidated—while reckless inclusion will result in excision and redetermination of probable cause. This is not the exclusionary rule.

As the court correctly notes, the purposes of the exclusionary rule are deterrence of inappropriate law enforcement conduct and preservation of judicial integrity. These are not factors to be considered in determining whether there has been a constitutional violation in the first place, although the court's analysis suggests that they are. The analysis is wrong. Further, because of the blurred analysis it is not possible to tell whether or at what point a constitutional violation has occurred. It is only possible to tell what remedy the court believes to be appropriate where certain culpability is found.