**Willie K. JACKSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–5885.

Court of Appeals of Alaska.

Oct. 11, 1996.

1182

Marcia E. Holland, Assistant Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Willie K. Jackson appeals his conviction for fourth-degree misconduct involving a controlled substance (possession of cocaine), AS 11.71.040(a). He contends that the cocaine found on his person should have been suppressed because it was the fruit of an illegal arrest. We affirm.

In 1993, Jackson was convicted of selling cocaine (third-degree misconduct involving a controlled substance). He was sentenced to 3 years' imprisonment with 18 months suspended (18 months to serve). The duration of Jackson's probation was 3 years from the time of his release.

Jackson filed an appeal and was released on bail pending appeal. However, on September 9, 1993 (while Jackson's appeal was still pending), Acting Superior Court Judge Jane F. Kauvar revoked Jackson's bail and ordered him incarcerated. Jackson was never again able to secure bail release. With his appeal still unresolved, Jackson served his 18-month sentence of imprisonment and was released from custody on August 1, 1994.

Five weeks later, on September 8, 1994, the district attorney's office asked the court to issue a bench warrant for Jackson's arrest. In the warrant application, Probation Officer Mike Tanner asserted that Jackson had violated the terms of his probation by failing to report to his probation officer (Tanner) upon his release from incarceration. On October 5, 1994, Judge Kauvar issued the requested bench warrant.

On October 17, 1994, the district attorney's office asked the court to quash the bench warrant. The district attorney's office told the court that the bench warrant had been issued in error: Jackson's appeal was still pending, and thus (the district attorney concluded) Jackson's probation was stayed by virtue of Alaska Appellate Rule 206(a)(3). That is, the prosecutor told the court that Jackson had not violated the conditions of his probation because Jackson's period of probation had not yet begun.

On October 28, 1994, while the motion to quash was pending, Fairbanks Police Sergeant John Baus received a tip that drugs were being sold from a room in the Alaska Motel in downtown Fairbanks. Baus and another officer went to the Alaska Motel to investigate. The officers found four people in the motel room; one of these people was Jackson. The officers asked each person for identification, and they contacted their dispatcher to see if any of the four people had outstanding warrants.

The court had not yet ruled on the district attorney's motion to quash Jackson's bench warrant; thus, the warrant was still in effect. When the police dispatcher reported that there was a non-bailable bench warrant for Jackson, Sergeant Baus placed Jackson under arrest. During the ensuing search of Jackson's person, the police found cocaine in Jackson's pants pocket.

Following his indictment, Jackson asked the superior court to suppress this cocaine. Jackson argued that his arrest was illegal because the court should not have issued the bench warrant in the first place. Jackson noted that his appeal was pending; he argued that the pendency of his appeal meant that his probation was stayed. Jackson contended that, because he was not yet obligated to abide by the terms of his probation, he had not violated the terms of his probation when he failed to report.

The State responded that Sergeant Baus had acted in good faith by executing an outstanding bench warrant, as he was obliged to do. The State conceded that the warrant should not have been issued (since Jackson had not yet begun his probation), but the State noted that the bench warrant was facially valid and that the warrant application facially established probable cause for issuing the bench warrant.

Superior Court Judge Ralph R. Beistline found that Probation Officer Tanner had acted in good faith when he applied for the bench warrant:

Tanner believed that Jackson was on probation because [Jackson] had been released from custody after having served his sentence. Tanner did not realize that [Jackson's] appeal was pending at the time he sought the warrant.

Judge Beistline then rejected Jackson's contention that the bench warrant should not have been issued in the first place:

The warrant in question was issued by a judge upon application by a probation officer.... Based on the probation officer's assertion[s] that Jackson was on probation and had violated the conditions of probation, the judge found probable cause to arrest Jackson. Although that probable cause determination was based on what is now known to be a faulty premise, [this] court finds that the warrant was valid and binding until quashed. *See United States v. Parsons,* 585 F.2d 941 (8th Cir.1978), *cert. denied,* 439 U.S. 113[3], [99 S.Ct. 1057,] 59 L.Ed.2d 96 (1979); *State v. Malkin,* 722 P.2d 943 (Alaska 1986) (negligent misstatements in an affidavit for a search warrant do not render the warrant invalid). The warrant in question was voidable rather than void. It was clearly valid on its face. The search and seizure of the cocaine ... was therefore justified as having been made pursuant to a valid arrest warrant.

(Footnotes omitted.) [1] On appeal, Jackson challenges the superior court's ruling.

*Did the superior court have concurrent jurisdiction over Jackson while his appeal was pending?*

■ Jackson first contends that, because his appeal was pending, the superior court had no jurisdiction to take any action at all with respect to the probation imposed in his 1993 criminal case. This contention was not raised in the superior court.

Jackson relies on AS 22.07.020(a)(1), which states: "The court of appeals has appellate jurisdiction in actions and proceedings commenced in the superior court involving ... criminal prosecution[.]" However, AS 22.07.020 simply grants this court "appellate jurisdiction" over criminal cases. Neither this statute nor any other provision of AS 22.07 addresses the question of whether this court's appellate jurisdiction completely preempts the superior court's authority to deal with non-appellate issues that need to be addressed during the pendency of an appeal.

Alaska Appellate Rule 203 states that "[t]he supervision and control of the proceedings on appeal [are] in the appellate court from the time the notice of appeal is filed[.]" At the same time, however, Rule 203 indicates that the trial court retains ongoing jurisdiction to decide matters that arise in the underlying litigation—even matters affecting the appeal. The last sentence of Rule 203 empowers the appellate court to "modify or vacate any order made by the trial court in relation to the prosecution of the appeal, including any order fixing or denying bail". This language necessarily implies that the trial court retains the authority to issue "order[s] ... in relation to the prosecution of the appeal".

Other provisions of the appellate rules clearly indicate that the trial court retains jurisdiction to enter orders in the underlying litigation, even orders that collaterally affect the appeal. For instance, Appellate Rule 205 (which governs stays pending appeal in civil cases) provides that "[a] motion for a stay will normally not be considered by the supreme court unless application has previously been made to the trial court and has been denied, or has been granted on conditions other than those requested." Likewise, Appellate Rule 206(b) (which governs release pending appeal in criminal cases) declares that a defendant seeking appellate review of his or her bail pending appeal must provide the appellate court with the details of the

---

1. Judge Beistline additionally ruled that, even assuming the arrest was illegal, the cocaine should not be suppressed because the officers had acted in good faith. Given our disposition of this case, we need not reach the issues of wheth-er Alaska should recognize a "good faith" exception to the exclusionary rule and, if so, whether the facts of this case would qualify as "good faith" for purposes of this exception.

defendant's prior "application for release pending appeal ... made to the trial court", as well as "the reasons given by the trial court for denying the application". Appellate Rule 206(b)(2). *See also* Appellate Rule 208 (Custody of Prisoner in Habeas Corpus Proceedings); Appellate Rule 520 (General Authority of Appellate Courts).

The precise issue raised in Jackson's appeal is whether, pending appeal, a sentencing court has continuing jurisdiction to order a probationer's arrest and to adjudicate alleged violations of probation. This issue has not been decided in Alaska. However, several appellate courts have held that a sentencing court retains the authority to modify or to revoke a defendant's probation even when the defendant's appeal is pending. *United States v. Becker*, 536 F.2d 471, 473 (1st Cir. 1976); *United States v. Lindh*, 148 F.2d 332, 333 (3rd Cir.1944); *State v. Dubish*, 236 Kan. 848, 696 P.2d 969, 973 (1985); *Minovich v. State*, 18 Md.App. 368, 306 A.2d 642, 647 (1973), *cert. denied*, 415 U.S. 930, 94 S.Ct. 1441, 39 L.Ed.2d 488 (1974). Jackson cites no cases to the contrary.

We conclude that, even though Jackson's appeal of his conviction was pending before this court, the superior court still had jurisdiction to entertain and to adjudicate a petition to revoke Jackson's probation in his underlying criminal case.

*Was Jackson's probation automatically stayed by Appellate Rule 206(a)(3)?*

■ Jackson next argues that, even if a sentencing court retains jurisdiction to take action against a probationer while an appeal is pending, the bench warrant issued for Jackson's arrest was invalid. Jackson asserts that, at the time the superior court issued the bench warrant, he was not yet on probation and therefore he could not have violated the reporting requirements of his probation.

The legal complexity of Jackson's case arises from Alaska Appellate Rule 206(a). Rule 206(a) describes how execution of a criminal judgement is affected by the defendant's filing of an appeal. The rule is short and, at first blush, appears to be completely straightforward. Under Appellate Rule 206(a)(1), "[a] sentence of imprisonment shall be stayed if an appeal is taken and [if] the defendant is released [on bail] pending appeal". And under Appellate Rule 206(a)(3), "[a]n order placing the defendant on probation shall be stayed if an appeal is taken". However, the facts of Jackson's case demonstrate that even an apparently simple rule can pose difficult questions.

As described above, Jackson was initially released on bail pending appeal, but the superior court later revoked Jackson's bail and remanded him to custody. Because Jackson was no longer on bail release pending appeal, his prison sentence was no longer stayed. He served his entire 18–month prison sentence while his appeal remained undecided. The problem in Jackson's case is to determine his status when, with his appeal still pending, he emerged from prison after completing his sentence.

Jackson argues that, under Appellate Rule 206(a)(3), his probation was automatically stayed because his appeal was still pending. The State argues, however, that Rule 206(a)(3) does not apply to Jackson.

The State's argument is premised on the fact that Alaska Appellate Rule 206(a) derives from former Federal Criminal Rule 38 (as it existed prior to October 1, 1972). Like Alaska Appellate Rule 206(a)(3), former Federal Criminal Rule 38(a)(4) stated, "An order placing the defendant on probation shall be stayed if an appeal is taken." However, an "order placing a defendant on probation" had (and continues to have) a very specific meaning under federal sentencing law.

When former Federal Criminal Rule 38(a)(4) was in force, a federal court could sentence a criminal defendant either to imprisonment or to probation, but not to both. Federal courts were not authorized to impose a "split sentence" (a sentence calling for imprisonment followed by probation) except under the limited circumstances set forth in the second paragraph of former 18 U.S.C. § 3651. (This statute empowered a court to impose up to 6 months' imprisonment at the beginning of an otherwise probationary sentence.) Apart from this, the only way that a federal court could achieve a sentence that was part imprisonment and part probation

was by imposing consecutive sentences on different counts (some sentences calling for imprisonment, some calling for probation). *See United States v. Entrekin*, 675 F.2d 759, 761–62 (5th Cir.1982); *United States v. Graham*, 579 F.Supp. 312, 313 n. 2 (N.D.Ind. 1984).

(Alaska law was originally the same. Under § 5405 CLA 1933, a sentencing court wishing to place a defendant on probation could either suspend the imposition of sentence or, alternatively, impose a prison sentence and then suspend the execution of that sentence. However, the court's power to suspend execution of a prison sentence was limited to suspending the entire sentence. This was changed in 1947, when the territorial legislature amended the statute to authorize a sentencing judge to suspend the execution of the sentence "or any part thereof". Ch. 35, § 1, SLA 1947. Two years later, the amended statute was recodified as § 66–16–31 ACLA 1949. Following statehood, a slightly reworded version of this statute became AS 12.55.080.)

Thus, when Federal Criminal Rule 38(a) spoke of "an order placing the defendant on probation", this meant an order sentencing the defendant to probation and not to imprisonment.[2] The State asks us to give the same gloss to the language of Appellate Rule 206(a)(3), which was taken from Federal Criminal Rule 38(a). Interpreted in this manner, Appellate Rule 206(a)(3) would not apply to Jackson because he received a sentence of imprisonment, not just a sentence of probation. Jackson's probation therefore would have commenced when he left prison after serving his unsuspended 18–month term, and Jackson's ensuing failure to report to his probation officer would constitute a violation of his probation.

The State's interpretation of Rule 206(a)(3) is supported by the history of the rule, and it is consistent with prior decisions of this court.[3] Jackson argues, however, that even though he was sentenced to a term of imprisonment in his 1993 case, the judgement entered against him nevertheless constituted an "order placing the defendant on probation". He points out that the 1993 judgement has two parts: the first part ordered Jackson "committed to the care and custody of the ... Department of Corrections" during the

---

2. Federal law now authorizes a federal district court to sentence a defendant to imprisonment followed by probation, but not the way it is done in Alaska (by suspending a portion of the defendant's imprisonment). Rather, under *18 U.S.C. § 3583*, a sentencing court may add a term of probation on top of the defendant's sentence of imprisonment. After serving the full prison sentence, the defendant commences probation. If the defendant fails to abide by the conditions of probation, the court can revoke the probation and sentence the defendant to prison, but this prison term is over and above the defendant's original sentence, and it is based on the degree of the defendant's offense, not on the amount of jail time that the defendant originally received. *See 18 U.S.C. § 3583(e)*.

3. This court has only once before been required to construe Appellate Rule 206(a)(3). In *Wickham v. State*, 770 P.2d 757 (Alaska App.1989), *rev'd on other grounds*, 796 P.2d 1354 (Alaska 1990), the defendant had been convicted of perjury and had received a suspended imposition of sentence, conditioned on his successful completion of 3 years' probation. Wickham appealed, but while the appeal was pending he submitted to Department of Corrections supervision as a probationer. At the end of the three years, Wickham asked the sentencing court to set aside his conviction because he had successfully complet-

ed probation. The State opposed, arguing that, by virtue of Appellate Rule 206(a)(3), Wickham's probation had been automatically stayed for 16 months while Wickham's appeal was litigated. The State contended that, because of the appeal, Wickham still faced several months' more probation. The superior court was convinced by the State's argument and refused to set aside Wickham's conviction. *Wickham*, 770 P.2d at 758.

In Wickham's ensuing appeal to this court, the State reiterated its argument that, under Appellate Rule 206(a)(3), Wickham's probation was automatically stayed during the pendency of his (first) appeal. This court accepted the State's contention, but we also ruled that it would be fundamentally unfair to deny Wickham credit for the three years during which he submitted to Department of Corrections supervision. *Id.* at 760.

The State's argument in *Wickham*—that Wickham's probation was automatically stayed under Appellate Rule 206(a)(3)—is not inconsistent with its argument in the present appeal. Wickham was on probation because he received a suspended imposition of sentence. Wickham's SIS would constitute an "order placing the defendant on probation" under the federal law the State relies on. The same is true of the one case cited by Jackson, *People v. Taylor*, 876 P.2d 130 (Colo.App.1994). The defendant in *Taylor* was "sentenced ... to probation". *Id.* at 131.

term of his imprisonment, while the second part declared that Jackson, "after serving [his] term of incarceration[,] is placed on probation for a period of 3 years". This second portion of the judgement, Jackson argues, is an "order placing the defendant on probation" for purposes of Appellate Rule 206(a)(3), and this portion of the judgement was therefore stayed by virtue of his still-pending appeal.

Jackson's interpretation of his judgement and of Appellate Rule 206(a)(3) is problematic because it leads to results that are unlikely to represent the intent of the Alaska Supreme Court (the promulgators of the rule). Under Jackson's reading of the rule, he was not bound by the conditions of probation when he emerged from prison. Two scenarios would then be possible: either Jackson continued to be governed by the conditions of bail pending appeal previously established by the superior court, or Jackson was also free of all bail conditions. If Jackson was free of any conditions (bail or probation), then society was unprotected from a person who, presumably, continued to pose a danger to society if left unsupervised. On the other hand, if the superior court's bail conditions continued to apply to Jackson, then he should not have been released from prison: Jackson was in prison to begin with only because he could not meet the superior court's requirements for bail pending appeal.

Moreover, Jackson's interpretation of Rule 206(a)(3) would potentially put that rule in conflict with AS 33.20.040(c). Under AS 33.20.040(a), when a prisoner serving a sentence of 2 years or more accumulates sufficient good time credit, he or she is released on mandatory parole. Under AS 33.20.040(c), if the prisoner's sentence "includes a residual period of probation, the probationary period shall run concurrently with [the] period of mandatory parole ... and the prisoner shall be under the concurrent jurisdiction of the court and the parole board". In other words, the legislature wished to have a defendant's period of probation supervision commence on the day he or she leaves prison, rather than have probation delayed until the defendant has completed mandatory parole.[4]

But under Jackson's interpretation of Rule 206(a)(3), defendants whose cases are still on appeal at the time of their release from prison on mandatory parole would be penalized because their probation would remain stayed. They would spend time under parole supervision and then, whenever their appeal was decided, they would commence their probation supervision. Thus, they would spend more time under government supervision than a similarly situated prisoner who did not appeal (or whose appeal was already decided). (Jackson himself did not face this problem because he received a sentence of only 18 months' imprisonment and thus the mandatory parole statute did not apply to him.)

Because the State's interpretation of Appellate Rule 206(a)(3) is supported by the statutory derivation of the rule, and because we believe that Jackson's interpretation of Rule 206(a)(3) leads to results that are contrary to the intentions of the rule's drafters, we adopt the State's interpretation of the rule. For purposes of Appellate Rule 206(a)(3), an "order placing the defendant on probation" is a suspended imposition of sentence or an order that suspends a term of imprisonment in its entirety. Rule 206(a)(3) does not apply to a judgement that sentences a defendant to serve any or all of a term of imprisonment.[5]

---

**4.** This was a conscious choice on the part of the legislature. The version of AS 33.20.040 that was in effect until 1987 embodied the opposite rule: a defendant's probation did not begin to run until the completion of mandatory parole supervision. *See Lipscomb v. State,* 869 P.2d 166, 167 (Alaska App.1994).

**5.** When a defendant receives a "split" sentence (a term of imprisonment followed by probation), Rule 206(a)(1) continues to govern: if the defendant is released on bail pending appeal, the defendant's sentence of imprisonment is stayed.

Depending upon the wording of the judgement, this may amount to an automatic stay of the defendant's probation as well.

For example, the judgement entered in Jackson's case states that Jackson is to commence his probation "after serving [his] term of imprisonment". A defendant who is released on bail pending appeal will not serve the "term of imprisonment" during the pendency of the appeal. Under the wording of a judgement like the one Jackson received, probation does not commence until after the defendant serves the prison term.

Given our interpretation of Appellate Rule 206(a)(3), we hold that Jackson was on probation when he was released from prison, and the superior court could therefore issue a bench warrant for his arrest when he failed to report to his probation officer.

*Alternatively, even if Jackson's probation was stayed under Appellate Rule 206(a)(3), the superior court was authorized to issue a warrant for Jackson's arrest if the court believed (even mistakenly) that he had violated the conditions of probation.*

█ We additionally uphold the superior court's bench warrant on the independent ground that the court was authorized to order Jackson's arrest if the court had probable cause to believe (even mistakenly) that Jackson had violated the conditions of his probation.

Jackson argues that if his probation was stayed under Appellate Rule 206(a)(3), then the superior court had no authority to issue a bench warrant for his arrest. Jackson's argument is premised on the second sentence of AS 33.05.070, the statute that authorizes the superior court to issue a warrant for the arrest of a probationer:

> At any time within the probation period, or within the maximum probation period permitted by AS 12.55.080 and 12.55.090, the court for the district in which the probationer is being supervised or, if the probationer is no longer under supervision, the court for the district in which the probationer was last under supervision may issue a warrant for the probationer's arrest for violation of probation occurring during the probation period.

Jackson contends that this statute authorizes the superior court to issue an arrest warrant only if the person to be arrested is on probation. Jackson argues that, if he was not on probation (because of his pending appeal), then AS 33.05.070 gave the superior court no authority to issue a warrant for his arrest.

We reject Jackson's construction of AS 33.05.070 because it is at odds with the language of the statute. The statute allows the superior court to issue a warrant for a probationer's arrest, not just "within the probation period", but "[a]t any time ... within the maximum probation period permitted by AS 12.55.080 and 12.55.090". (At the time of Jackson's 1993 offense, this maximum period was 5 years.) A second clause of AS 33.05.070 also clearly states that the court's authority to issue a warrant is not tied to the defendant's period of probation: the statute provides that "if the probationer is no longer under supervision"—that is, if the defendant has completed his probation—"the court for the district in which the probationer was last under supervision" still may issue an arrest warrant based on an earlier violation of probation.

As this court ruled in *Galaktionoff v. State*, 733 628, 630 (Alaska App.1987), AS 33.05.070 was intended to implement the court's authority to retrospectively revoke a defendant's probation at any time within the maximum period specified in AS 12.55.090—even after a defendant has completed probation supervision—if it is later discovered that the defendant committed a crime while on probation. (As *Galaktionoff* points out, federal courts construing the parallel federal provision, former 18 U.S.C. § 3653, uniformly reached the same result. See the cases cited in *Galaktionoff*, 733 P.2d at 630.)

█ *Galaktionoff* addresses a sentencing court's power to retrospectively revoke a defendant's probation after the period of probation supervision has ended. Thus, one might argue that even though AS 33.05.070 grants sentencing courts the power to issue an arrest warrant "[a]t any time ... within the maximum probation period permitted by ... [AS] 12.55.090", this power does not go into effect until after the defendant commences probation. But under Alaska law, a sentencing court is also empowered to prospectively revoke a defendant's probation if the defendant commits a new crime before the defendant begins probation supervision. *Enriquez v. State*, 781 P.2d 578, 579–580 (Alaska App.

---

Thus, a stay of the prison term necessarily delays the commencement of probation.

If the judgement is not worded this carefully, then the sentencing court will have to determine on a case-by-case basis whether to grant a stay of probation to a defendant who receives a split sentence and who is released on bail pending appeal.

1989). Because the legislature has empowered a sentencing court to prospectively revoke a defendant's probation before probation supervision begins, it would make little sense to construe AS 33.05.070 to prohibit the sentencing court from issuing an arrest warrant to bring such a defendant before the court. If AS 33.05.070 were construed to deny the superior court this power, it would be inconsistent with AS 22.10.050, which grants the superior court "all power and authority necessary to carry into complete execution all its judgments, decrees, and determinations in all matters ... according to the constitution, the laws of [this] state, and the common law".

■ We therefore hold that the superior court's authority to issue a bench warrant for a probationer's arrest under AS 33.05.070 is not temporally bounded by the defendant's period of probation supervision. The court has jurisdiction to issue a warrant for a probationer's arrest from the time of sentencing (even before the defendant has begun probation supervision) until the expiration of the maximum probation period specified in AS 12.55.090 (even after the defendant has completed probation supervision).

What, then, of the possibility that Jackson's probation was stayed because of his pending appeal? We conclude that it is irrelevant whether or not Jackson was on probation when the court issued the bench warrant. Even if the warrant application inaccurately stated that Jackson was on probation, this of itself would not invalidate the warrant.

■ The Fourth Amendment to the United States Constitution provides, "No warrants shall issue, but upon probable cause[.]" Article I, Section 14 of the Alaska Constitution similarly declares, "No warrant shall issue but upon probable cause[.]" This language could conceivably be read to completely invalidate a warrant issued on less than probable cause. However, neither the United States Supreme Court nor the Alaska Supreme Court has interpreted these constitutional provisions that way. A warrant does not become a nullity when the assertions of probable cause in the warrant application

later turn out to be false. The warrant can be attacked based on misstatements of fact in the warrant application, but if those false assertions were the product of innocent or even negligent mistake, the warrant remains valid. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978); *State v. Malkin*, 722 P.2d 943, 946 (Alaska 1986).

■ Given our construction of AS 33.05.070, and given *Franks* and *Malkin*, Judge Beistline was correct when he ruled that the bench warrant issued for Jackson's arrest was "voidable" but not "void". Even assuming for purposes of argument that Jackson had not yet commenced his probation and was not yet bound by the conditions of his probation, this would undermine the probable cause statement in the warrant application (probable cause to believe that Jackson had violated the conditions of his probation), but it would not negate the superior court's judicial authority to issue the warrant. Jackson could attack the warrant under *Malkin*, but absent such an attack the warrant was valid and enforceable.

In the trial court, Jackson and the State agreed that, contrary to the assertions in the warrant application, Jackson had not commenced his probation and thus had not violated his reporting requirement. Jackson, however, did not argue that the warrant should be invalidated under *Malkin* because the person who applied for the warrant recklessly or intentionally misstated the facts. Instead, Jackson argued that, under the objective facts, the superior court had no authority to issue the warrant. In effect, Jackson asserted that the affiant's state of mind was irrelevant: no matter whether the probation officer acted in good faith or bad, the fact remained that Jackson was not on probation, and thus the superior court had no power to issue a warrant. Judge Beistline rejected Jackson's argument, and we have just upheld his ruling.

■ On appeal, Jackson makes an alternative argument based on *Malkin*. He asserts that even if the superior court had the authority to issue the bench warrant for his arrest, nevertheless both Probation Officer

**1190**

Tanner and the judge who issued the warrant (Jackson's trial judge) must have known that Jackson's probation was stayed. Because the warrant was issued in reckless disregard for the truth, Jackson contends, the warrant must be invalidated.

■■■■■ This claim is forfeited. Generally, Fourth Amendment claims can not be raised for the first time on appeal. *Moreau v. State*, 588 P.2d 275, 279–280 (Alaska 1978). *Moreau* indicates that "[s]ingularly egregious violations [of the Fourth Amendment] might be [raised] for the first time on appeal". *Id.* at 280 n. 13. However, to avail himself of this exception, Jackson would have to demonstrate that the existing record plainly reveals a singularly egregious illegality. It does not.

The officers who performed the search of Jackson's person at the motel were simply executing an arrest warrant that had been issued by the superior court. As to the probation officer who applied for the arrest warrant and the judge who issued it, even if we assume for purposes of argument that Jackson's probation was in fact stayed by operation of Appellate Rule 206(a)(3), it was nevertheless at least reasonably debatable whether Appellate Rule 206(a)(3) automatically stayed a defendant's probation under the circumstances of Jackson's case. It therefore follows that the record does not plainly demonstrate that the probation officer or the judge acted in bad faith or in reckless disregard of the truth when they (respectively) applied for and issued the warrant.

■■■ Jackson attempts to avoid this procedural forfeiture by arguing that a *Malkin* argument was implicit in his assertion that the warrant application misstated his probationary status. However, *Malkin* requires a defendant to do more than simply point out that a warrant application contains material misstatements of fact. Describing the foundational assertions that a defendant must make, the Alaska Supreme Court quoted with approval the following passage from

6. Compare *Stephan v. State*, 711 P.2d 1156, 1165 (Alaska 1985), where the supreme court held that even though the police fail to tape record a custodial interview, there is no reason

*Franks v. Delaware*, 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.

*Malkin*, 722 P.2d at 946 n. 5.

■■■ This passage is somewhat problematic. It might be read to mean that a defendant raising a *Malkin* claim is required to establish a prima facie case of intentional or reckless misstatement before the court need hold a hearing on the matter. Such a reading is arguably inconsistent with the supreme court's decision to place the burden on the government to prove innocent or negligent mistake. *Malkin*, 722 P.2d at 947–48. However, leaving aside questions concerning the burden of proof, it is clear that the quoted passage at a minimum establishes a burden of pleading: a defendant who challenges a warrant under *Malkin* must at least allege that the warrant application contains either intentional or reckless misstatements of fact.[6]

In the trial court, Jackson never asserted that the probation officer who applied for the bench warrant or the judge who issued it acted recklessly or in bad faith. Thus, Jackson's *Malkin* argument is not preserved.

We therefore uphold the bench warrant for Jackson's arrest on the independent ground that, even if it later turned out that the warrant's factual premise was mistaken (*i.e.,* even if Jackson was not on probation because of his pending appeal), the superior court still was authorized to issue the warrant and the warrant remained enforceable because Jackson did not allege that the misstatements in the warrant application were anything more than negligent.

to suppress the contents of that interview "if no testimony is presented that the statement is inaccurate or was obtained improperly, apart from violation of the [taping requirement]".

*Conclusion*

Because the bench warrant commanding Jackson's arrest was valid, the police acted lawfully when they arrested Jackson and, searching his person incident to arrest, they discovered the cocaine. The judgement of the superior court is AFFIRMED.